1
2
3
4
5
6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

7    WEST AMERICAN INSURANCE          )     NO.  CV 07-37-N-EJL
     COMPANY, a foreign corporation,  )
8                                     )     MEMORANDUM DECISION
                     Plaintiff,       )     AND ORDER
9                                     )
                                      )
10        v.                          )
                                      )
11   RED CRICKET CONDOMINIUM          )
     ASSOCIATION, a Washington        )
     condominium association,         )
12                                    )
                     Defendants.      )
13   _____)

14

15        Pending before the Court in the above-entitled matter is Plaintiff's Motion for

16   Summary Judgment (Docket No. 23).  The matter has been fully briefed and is now ripe

17   for the Court's review.  Having fully reviewed the record, the Court finds that the facts

18   and legal arguments are adequately presented in the briefs and record.  Accordingly, in

19   the interest of avoiding further delay, and because the Court conclusively finds that the

20   decisional process would not be significantly aided by oral argument, this matter shall

21   be decided on the record before this Court without oral argument.

22                              Factual Background

23        The facts of this case are generally undisputed.  Plaintiff West American

24   Insurance Company ("West American") is an insurance company that issued a

25   Commercial Businessowners policy to the Red Cricket Condominium Association

26   ("Red Cricket").  The effective dates of the policy were from June 26, 2005 to June 26,

27   2006.

28

MEMORANDUM DECISION AND ORDER - 1

1    Prior to May 17, 2006, construction began by G.F. Barnes Construction, Inc., on
2    behalf of Larkspur Land Development on condominium units to be located on the
3    mountainside above the Red Cricket Condominiums. During the construction period
4    there were large amounts of excavated material that was placed upslope of the Red
5    Cricket Condominiums in a steep ravine through which seasonal surface runoff flowed.
6    The contractor intended to use the excavated materials as backfill as the construction
7    project progressed.  The excavated material was not placed according to any engineered
8    plan, nor were steps taken to stabilize the location of such material or to redirect the
9    flow of seasonal runoff through the excavated materials.  The combination of poor
10   storage practice combined with some addition of water resulted in an unstable
11   condition, the result being the earth movement down the hill.

12   On or about May 17, 2006, the excavated material, which had become saturated
13   by spring runoff, traveled down the mountainside and struck the rear of the Red Cricket
14   Condominiums collapsing most of the back concrete wall.  The soil mass continued
15   through the building and out the garage doors in the front.  The majority of the front
16   wall was also destroyed.  Red Cricket sued the contractor and developers of the upslope
17   construction project.  That matter was mediated and the state court lawsuit was
18   dismissed by stipulation.  <u>See</u> Docket No. 26-3 and 26-4.

19   Red Cricket filed a Proof of Loss with its own insurance company as well
20   regarding the damage to the condominiums claiming the damage was caused by a
21   falling object, not a mudslide or mudflow.  West American denied the request for
22   coverage saying the damage was caused by a mudslide or mudflow and such damage
23   is specifically excluded under the terms of the policy.  West American also denied the
24   earth movement could be deemed a "falling object" under the terms of the policy.  The
25   insurance policy provides for certain exclusions:

26       B.  Exclusions.
         1.    We will not pay for loss or damage caused directly or
27             indirectly by any of the following. Such loss or damage is
               excluded regardless of any other cause or event that
28             contributes concurrently or in any sequence to the loss.
         . . .

MEMORANDUM DECISION AND ORDER - 2

g.  Water
      (1) flood, . . .
      (2) Mudslide or mudflow;
. . .
I.  Collapse
Collapse, except as provided in Additional Coverage for
Collapse.  But if collapse results in a Covered Cause of
Loss, we will pay for the loss or damage caused by the
Covered Cause of Loss.

Docket No. 26, Exhibit A.

The Amendment of Collapse Coverage, page 86 of the policy provides:

d. Collapse
  (1)    We will pay for direct physical loss or
           damage to Covered Property, caused by
           collapse of a building or any part of a
           building insured under this policy if the
           collapse is caused by one or more of the
           following:
           (a)    the "specified causes of loss"
                 or breakage of building glass,
                 all only as insured against in
                 this policy
           (b)    decay that is hidden from
                 view, unless the presence of
                 such decay is know to you
                 prior to collapse;
           (c)    insect or vermin damage that
                 is hidden from view, unless
                 the presence of such damage
                 is known to you prior to
                 collapse;
           (d)    weight of people or personal
                 property;
           (e)    weight of rain that collects on
                 a roof;
           (f)    Use of defective material or
                 methods in construction,
                 remodeling or renovation if
                 the collapse occurs during the
                 course of the construction, . .
                 .
. . .
  (4)    With respect to this Additional Coverage,
           collapse means:
           (a)    an abrupt falling down or
                 caving in with the result that
                 the building cannot be
                 occupied or the personal
                 property used, for its intended
                 purpose.

Docket No. 26, Exhibit A.

MEMORANDUM DECISION AND ORDER - 3

Because Red Cricket alternatively argues the damage is covered under a different section of the policy dealing with falling objects, the Court must examine those portions of the policy as well. "Specified Causes of Loss" includes "falling objects" in Section H.6 of the Policy.

> H. Property Definitions
>> 6.       Specified Causes of Loss means the following:
>> Fire, lightning, explosion, windstorm, or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action; falling objects; weight of snow, ice or sleet; water damage.
>> b.       Falling objects does not include loss of or damage to:
>> (1) Personal property in the open; or
>> (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by falling object.
>> c.       Water damage means accidental discharge or leakage of water or steam as the direct result of breaking apart or cracking of any part of a system or appliance. . . .

Docket No. 26, Exhibit A.

West American claims based on their engineer's inspection of the site on May 22, 2006, the loss is excluded under the policy as the damage was caused by a mudslide or mudflow. Moreover, even if the mudslide or mudflow was the result of negligent construction practices of a third party, any coverage for loss due to such negligence is also excluded under the terms of the policy. Red Cricket's engineer, Mark Aden, who inspected the site on May 20, 2006, claims the soil mass involved little or no participation of the native soils and that the "event would never have occurred if not for the careless treatment of this construction excavation material. In my opinion, this does not at all meet the traditional definition of a mudslide or mudflow, as those are typically naturally occurring phenomena, and as noted above, there was no participation of the native material in this instance." Docket No. 38, p.3, ¶ 10.

MEMORANDUM DECISION AND ORDER - 4

1    Defendant's construction expert, Terry Goebel, opines in his declaration that the

2    excavation material was not properly stabilized and became heavy enough due to spring

3    runoff to fall and cause the damage to Red Cricket.  Docket No. 40, Exhibit A. He also

4    states "the native soil that comprised the surface of the slope was generally not

5    involved."  Docket No. 40, p. 2, ¶ 6.

6    Defendant also argues the excavated soil is more like a "falling object" which

7    is covered by the insurance policy's Additional Coverage section of the policy which

8    addresses a partial or total collapse that results from a "falling object."  Defendant's

9    engineer, W. Paul Grant, opines that "[t]he movement of the stockpile is analogous to

10   that of a failure of an improperly constructed building which falls and causes damage

11   to adjacent property, in that both events are caused by poor construction and not

12   adhering to building codes."  Docket No. 39, p. 2, ¶ 8. West American denies that the

13   earth movement involved in this case is analogous to a falling object as set forth in the

14   policy.

15   It is important to note that the insurance policy does not define the terms

16   "mudslide," "mudflow" or "falling object."

17   Plaintiff West American filed this declaratory judgment action regarding their

18   liability under the insurance policy.  Red Cricket filed a counterclaim against West

19   American for breach of contract and specific performance, equitable restitution and/or

20   unjust enrichment.

21                              Standard of Review

22   Motions for summary judgment are governed by Rule 56 of the Federal Rules

23   of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be

24   rendered forthwith if the pleadings, depositions, answers to interrogatories, and

25   admissions on file, together with the affidavits, if any, show that there is no genuine

26   issue as to any material fact and that the moving party is entitled to a judgment as a

27   matter of law." Fed. R. Civ. P. 56(c).

28

MEMORANDUM DECISION AND ORDER - 5

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial.  See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute .  .  . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

---

[1]  See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM DECISION AND ORDER - 6

1    Of course, when applying the above standard, the court must view all of the

2    evidence in a light most favorable to the non-moving party.  Anderson v. Liberty

3    Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th

4    Cir. 1992).

5                                                    Analysis

6    1. Choice of Law

7        The parties do not dispute that the Court should apply the substantive contract

8    and insurance law of the state of Idaho.

9

10   2.  General Insurance Contract Law

11       Insurance contract interpretation is governed by well-settled law.  Courts apply

12   the general rules of contract law subject to certain special rules of constructions.  As

13   stated by the Idaho Supreme Court in Hall v. Farmers Alliance Mut. Ins. Co., 179 P.3d

14   276, 280-281 (Idaho 2008):

15           "Interpretation of an ambiguous document presents a question of fact. On
             the other hand, interpretation of an unambiguous document is a question
16           of law." DeLancey v. DeLancey, 110 Idaho 63, 65, 714 P.2d 32, 34
             (1986) (internal quotations omitted). Further, "[i]nsurance policies are a
17           matter of contract between the insurer and the insured." AMCO Ins. Co.
             v. Tri-Spur Inv. Co., 140 Idaho 733, 739, 101 P.3d 226, 232 (2004). So,
18           "[i]nterpretation of an unambiguous insurance contract is a question of
             law subject to free review." Ryals v. State Farm Mut. Auto. Ins. Co., 134
19           Idaho 302, 304, 1 P.3d 803, 805 (2000). But, "where there is an
             ambiguity in an insurance contract, special rules of construction apply to
20           protect the insured." Foremost Ins. Co. v. Putzier, 102 Idaho 138, 142,
             627 P.2d 317, 321 (1981). "Under these special rules, insurance policies
21           are to be construed most liberally in favor of recovery, with all
             ambiguities being resolved in favor of the insured." Id. Finally, "[t]he
22           meaning of the insurance policy and the intent of the parties must be
             determined from the plain meaning of the insurance policy's own words."
23           National Union Fire Ins. Co. v. Dixon, 141 Idaho 537, 540, 112 P.3d 825,
             828 (2005).

24

25   To determine if there is an ambiguity, the Court looks at the plain meaning of the words

26   in the insurance contract.  In Mason v. State Farm Automobile Ins. Co., 177 P.3d 944,

27   948 (Idaho 2008) the court ruled:

28           In construing an insurance policy, the Court must look to the plain
             meaning of the words to determine if there are any ambiguities. Cascade

MEMORANDUM DECISION AND ORDER - 7

Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co., 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (citing Clark v. Prudential Prop. and Cas. Ins. Co., 138 Idaho 538, 540, 66 P.3d 242, 244 (2003)). In resolving this question of law, the Court must construe the policy "as a whole, not by an isolated phrase." Id. (citing Selkirk Seed Co. v. State Ins. Fund, 135 Idaho 434, 437, 18 P.3d 956, 959 (2000)). Where the policy language is clear and unambiguous, coverage must be determined according to the plain meaning of the words used. Cascade Auto Glass, Inc., 141 Idaho at 662-63, 115 P.3d at 753-54 (citing Clark, 138 Idaho at 541, 66 P.3d at 245 (2003)). An insurance policy provision is ambiguous if "it is reasonably subject to conflicting interpretations." Cascade Auto Glass, Inc., 141 Idaho at 663, 115 P.3d at 754 (citing North Pac. Ins. Co. v. Mai, 130 Idaho 251, 253, 939 P.2d 570, 572 (1997); City of Boise v. Planet Ins. Co., 126 Idaho 51, 55, 878 P.2d 750, 754 (1994)). If the Court finds any ambiguities in the insurance policy, they must be construed against the insurer. Id. (citing Farmers Ins. Co. of Idaho v. Talbot, 133 Idaho 428, 435, 987 P.2d 1043, 1050 (1999) ("The general rule is that, because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract must be construed most strongly against the insurer.")).

3. Is the insurance contract at issue ambiguous for the term mudflow/mudslide?

Whether an insurance policy is ambiguous is a question of law. AMCO Ins. Co. v. Tri-Spur Inv. Co., 101 P.3d 226, 232 (Idaho 2004). The first question in this case is whether the specific the exclusion for mudflows or mudslides is ambiguous. As stated earlier, if the policy language is clear and unambiguous, coverage must be determined according to the plain meaning of the words used. Cascade Auto Glass, Inc., 115 P.3d 751, 753-54 (Idaho 2005). On the other hand a policy "is ambiguous if 'it is reasonably subject to conflicting interpretations.' " Id. at 754.

"A provision excluding coverage is strictly construed in favor of the insured and the insurer has the burden to use clear and precise language if it is restricting the scope of coverage." Arreguin v. Farmers Ins. Co. of Idaho, 180 P.3d 498, 501 (Idaho 2008) citing Moss v. Mid-America Fire and Marine Ins. Co, 647 P.2d 754 (Idaho 1982). "[E]xclusions not stated with specificity will not be presumed or inferred." Clark, 66 P.3d at 245.

MEMORANDUM DECISION AND ORDER - 8

1    In interpreting the plain language of the insurance policy as a whole, the Court

2 finds the contract exclusions in this insurance contract are clear and unambiguous: loss

3 or damage due to mudflows or mudslides are excluded regardless if such mudflows or

4 mudslides are caused by negligence of another party.

5    The Court acknowledges there are no definitions of "mudflow" or "mudslide"

6 in the insurance contract even though the 104 page contract does define numerous terms

7 throughout the contract.  "Like other contracts, insurance policies 'are to be construed

8 as a whole and the courts will look to the plain meaning and ordinary sense in which

9 words are used in a policy.'"  <u>Andrae v. Idaho Counties Risk Management Program</u>,

10 175 P.3d 195, 198 (Idaho 2007) (citations omitted).  To determine the plain meaning

11 and ordinary sense in which words are used, courts often look to the definition of such

12 words as found in the dictionary.

13    Merriam-Webster Online Dictionary, defines mudflow as "a moving mass of soil

14 made fluid by rain or melting snow; also: lahar."[2]  The Oxford English Dictionary

15 online defines "mudflow" as "a flowing or hardened stream of mud, such as one

16 resulting from soil made fluid by excessive water, or one produced by a mud volcano;

17 a lahar."[34]  Curiously, "mudslide" is not defined in the Court's hard copy of Webster's

18 Dictionary or in the Merriam-Webster Online Dictionary, even though that term seems

19 more commonly used by the media.  The Court then went to the Oxford English

20 Dictionary online which defined "mudslide" as "1. an incline of mud, especially

21

22

23
_____

24    [2]http://www.merriam-webster.com/dictionary/mudflow

25

26    [3]http://dictionary.oed.com/cgi/entry/00317574?single=1&query_type=word&queryword=mudflow&first=1&max_to_show=10

27    [4]Obviously, in this case it is not disputed by the parties that the mud slide did not result from a
28 mud volcano so the second definition relating to a lahar is inapplicable to the facts before this
Court.

MEMORANDUM DECISION AND ORDER - 9

smoothed and shaped to allow objects or people to slide down; 2. a landslip of mud."[5]

The Court finds the plain and ordinary meaning of the word "mudflow" is a moving mass of soil made fluid by rain or melting snow or soil made fluid by excessive water.  The Court finds the plain and ordinary meaning of "mudslide" would be an incline of mud or landslip of mud.

In reviewing these definitions, the Court notes that the plain meaning of such words does not require that a mudflow or mudslide involve native soil or a requirement that the mudflow or mudslide be a naturally occurring phenomena.[6]  While Defendant's experts opine the rest of the mountain remained intact and only the unstable excavated materials were part of the earth hitting the Red Cricket condominiums, this does not seem to be a distinction included in the ordinary definitions of the terms mudflow or mudslide.  Nor has Defendant provided a definition of mudflow or mudslide for the Court to apply.  The Court finds the plain meaning of "mudflow" is simply what the Defendant's experts testify occurred:  a moving mass of soil that was saturated by rain or melting snow and turned to mud.

Even though Defendant's expert believes native soil must be involved to have a mudslide, the Court does not find that this requirement is in the policy or in the ordinary meaning of the term.  This Court must apply the ordinary meaning to the words, not a technical definition relating to native soil supplied by an engineer without reference to the source of such definition other than the engineer's personal opinion.  Therefore, this does not create a genuine issue of material fact that would prevent summary judgment.

---

[5]http://dictionary.oed.com/cgi/entry/00317625?single=1&query_type=word&queryword=mudslide&first=1&max_to_show=10

[6]Arguably, the mudflow or mudslide that occurred in this case was a naturally  occurring phenomena as the spring runoff caused the pile of native soil to become fluid and slide down the hill into the condominiums.

MEMORANDUM DECISION AND ORDER - 10

1    In Arreguin v. Farmers Ins. Co. of Idaho, 180 P.3d 498 (Idaho 2008), the court

2    held that the outbuildings exclusionary provision of an insurance contract was

3    ambiguous as there were multiple definitions of outbuildings which made the ordinary

4    meaning of "outbuildings" subject to differing interpretations.  In the Arreguin case,

5    the court held the mere fact that the insurance company provided multiple definitions

6    to the court that both included and did not include attached buildings led the court to

7    conclude the term was ambiguous.

8        In the present case, the parties have not provided the Court with any definitions

9    of "mudslide" or "mudflow."  Rather, the parties have relied on the engineering experts

10   to say it was a mudflow or mudslide or it did not meet the "traditional definition" of

11   mudslide or mudflow, yet no definition of such terms are ever provided by the parties.

12   Since no definitions have been provided, the Court will apply the ordinary meanings

13   of such words as found in the cited dictionaries.  Unlike the court in Arreguin, this

14   Court does not find the cited definitions are subject to conflicting interpretations.  "The

15   meaning of the insurance policy and the intent of the parties must be determined from

16   the plain meaning of the insurance policy's own words."  National Union Fire Ins. Co.

17   v. Dixon, 112 P.3d 825, 828 (2005).  Finally, where the "policy language is clear and

18   unambiguous, coverage must be determined in accordance with the plain meaning of

19   the words used."  Mut. of Enumclaw Ins. Co. v. Roberts, 912 P.2d 119, 122 (1996).

20   Based on these cases and the Court's definition of mudflow and mudslide, the Court

21   finds no reasonable factfinder could find the extracted materials that were undisputedly

22   saturated by spring runoff do not fit the ordinary meaning of the words mudflow or

23   mudslide as intended by the parties based on the language in the insurance contract.

24       Stated another way, in applying the ordinary definitions and considering the

25   experts opinions on both sides, the Court finds there is no ambiguity and the earth

26   movement in this case fits the ordinary definition of "mudflow" and would be

27

28

MEMORANDUM DECISION AND ORDER - 11

1     specifically excluded from coverage.[7]

2

3     4.  Does the excavated material qualify as a falling object?

4        Defendant Red Cricket disputes the characterization of the loss as a "mudflow"

5 and maintains the collapse of the excavation materials is more analogous to a falling

6 object, loss from which is covered under the Amendment to Collapse Coverage.  Red

7 Cricket maintains the declarations of their experts create a genuine issue of material fact

8 regarding whether or not the earth movement is analogous to a falling object.

9        The policy does not define "falling object."  While the policy is clear that falling

10 objects are included in the definition of "specified causes of loss" which fall under the

11 collapse coverage, the policy is ambiguous on what is considered a falling object.  Even

12 applying the plain and ordinary meaning to the term "falling objects" does not help as

13 there are numerous definitions to each word.  "Fall" is defined by Webster's Ninth New

14 Collegiate Dictionary as "the act of falling by the force of gravity" and "object" is

15 defined as "something material that may be perceived by the senses."  There are, of

16 course, numerous other definitions for the words "fall" and "object," but the Court has

17 tried to select the ordinary definitions most applicable to the context of the insurance

18 policy at issue.

19        Red Cricket argues that the excavated material which was not properly stabilized

20 is analogous to a falling object such as a collapsing building that is improperly

21

22       [7]The legal result would be the same even if the Court found the lack of definition of "mudslide"
or "mudflow" created an ambiguity in the contract.  The "mere fact that a term is undefined in an

23 insurance policy does not make that term ambiguous if it has a settled legal meaning."  Melichar
v. State Farm Fire and Cas. Co., 152 P.3d 587 (Idaho 2007).  Unlike the Melichar case, which

24 decided there was a legal meaning to the term "occurs," there is not a settled "legal meaning" to
the terms "mudslide" or "mudflow."  Therefore, it is arguable that the Court could find the
undefined terms create an ambiguity in the contract.

25       However, under the special rules of construction, the Court would then "determine what a

26 reasonable person would have understood the language to mean and the words used must be
construed given their ordinary meaning."  Clark v. Prudential Prop. & Cas. Ins. Co., 66 P.3d 242,

27 244-45 (Idaho 2003).  The test is not what a trained engineer would define the terms to mean, but
what a "reasonable person" would have understood the terms to mean.  Again to find the ordinary

28 meaning, the Court would first go through the same analysis as above and the result would be the
same.  A reasonable person would have applied then ordinary meaning of mudflow provided in the
dictionary and would find that such a definition applied to the policy.

1   constructed.

2   The expert opinions submitted by Defendant and not rebutted by Plaintiff arguably do

3   create a genuine issue of material fact as to what is considered a falling object under the

4   policy.  It is at least arguable that a factfinder could find that the earth movement in this

5   case was a falling object.

6           As stated earlier, an insurance policy is ambiguous if it is subject to conflicting

7   interpretations and the Court finds the term "falling objects" is ambiguous in this

8   particular case.  In making this finding, the Court does not intend to indicate it believes

9   the earth movement was a falling object.  Rather, the Court finds there is a genuine

10  issue of fact for the factfinder to determine if the earth movement was or was not a

11  falling object in the plain sense of the words (as opposed to whether the earth

12  movement could be "analogous" to a falling object).  Because ambiguities must be

13  construed against the insurer, Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.,

14  115 P.3d 751, 754 (2005), the Court will assume for purposes of this motion that the

15  earth movement could be a falling object under the terms of the policy.

16          The next question becomes is "falling object" subject to the mudflow/mudslide

17  exclusions in the policy.   West American argues that regardless whether the earth

18  movement is a "falling object," the coverage provided for "collapse" caused by one of

19  the "specified causes of loss" listed in section H.6. is still subject to the exclusions

20  contained in Section B.  Section d. Collapse (1)(a) states:

21          the 'specified causes of loss' or breakage of building glass, *all only as*

22          *insured against in this policy.*" (Emphasis added.).

23  Therefore, West American argues that the earth movement which is alleged by Red

24  Cricket to also be a falling object undisputedly directly or indirectly became a mudflow

25  or mudslide and such coverage is specifically excluded.  The Court agrees.

26

27

28

MEMORANDUM DECISION AND ORDER - 13

1     The specific language of the exclusions states "We will not pay for loss or
2  damage caused directly or indirectly by any of the following.  Such loss or damage is
3  excluded regardless of any other cause or event that contributes concurrently or in any
4  sequence to the loss."   If the falling object is also directly or indirectly a mudflow or
5  mudslide, which this Court has found in the earlier portion of this Order, then the
6  requested coverage for a falling object that is also a mudflow or mudslide would be
7  excluded by the terms of the insurance contract.  This interpretation is also consistent
8  with the collapse coverage language that limits coverage for "specified causes of loss"
9  to "all only as insured against in this policy."   Since mudflows and mudslides are
10 specifically excluded in the Exclusions portions of the policy, the collapse coverage for
11 falling objects cannot put this particular factual scenario outside of the specific
12 exclusions listed and summary judgment must be granted in favor of Plaintiff.

13                                         Order

14    Being fully advised in the premises, the Court hereby orders that the Plaintiff's
15 Motion for Summary Judgment (Docket No. 23) is GRANTED.  The Proof of Loss
16 submitted by Defendant is excluded from coverage under the policy and Plaintiff is not
17 liable under the terms of the policy for the damages incurred by Defendant.  Because
18 the Court granted Plaintiff's summary judgment motion, the Defendant's counterclaims
19 are moot.  Plaintiff's counsel is directed to submit a proposed judgment to the Court
20 within ten (10) days of the receipt of this Memorandum Decision and Order.

21
22                                         DATED:  **July 29, 2008**
23
24
25                                         Honorable Edward J. Lodge
                                           U. S. District Judge
26
27
28

MEMORANDUM DECISION AND ORDER - 14